

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

```
                    FILED
                  JUL - 3 2008
            UNITED STATES BANKRUPTCY COURT
            EASTERN DISTRICT OF CALIFORNIA
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 08-90194-D-7 |
| ERIC JONES and KAREN STEPHANIE JONES, | Docket Control No. UST-2 |
| | Date: June 25, 2008 |
| Debtors. | Time: 10:30 a.m. |
| | Dept: D |

**MEMORANDUM DECISION**

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

The Acting United States Trustee for this district ("the UST") has filed a motion to dismiss this case for abuse, pursuant to 11 U.S.C. § 707(b)(1).[1] For the reasons set forth below, the court will grant the motion unless the debtors voluntarily convert this case to chapter 13 within 15 days from the date of service of this ruling.

I. INTRODUCTION

The debtors in this case, Eric Jones and Karen Stephanie Jones, filed a chapter 7 petition on February 12, 2008. The debtors indicated on the face page of their petition that their debts were primarily consumer debts rather than business debts,

---

1. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

and they have made no subsequent allegation to the contrary. At the same time, the debtors filed their Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, Official Form 22A ("February 12 Form 22A"), and schedules of their income and expenses, Schedules I and J.

On March 31, 2008, the UST filed a statement of presumed abuse, stating she had determined that the case should be presumed to be an abuse under § 707(b).

On April 8, 2008, the debtors filed an amended Form 22A ("April 8 Form 22A"), in which they segregated their average monthly income during the six months prior to the commencement of the case as between Mr. Jones and Mrs. Jones, whereas the February 12 Form 22A had attributed all of their income to Mr. Jones. In the April 8 Form 22A, the debtors also made changes to the amounts of certain expenses, including their car payments, payroll taxes, other payroll deductions, and health savings account deduction.

On April 22, 2008, the UST filed the United States Trustee's Motion to Dismiss Case for Abuse Pursuant to 11 U.S.C. § 707(b)(1), Under 11 U.S.C. §§ 707(b)(2) and 707(b)(3) (the "Motion"), along with two supporting declarations. The Motion was timely filed.[2]

/ / /

/ / /

---

2. A motion to dismiss a case under § 707(b) must be filed within 60 days after the date first set for the meeting of creditors (Fed. R. Bankr. P. 1017(e)(1)), and within 30 days after the date of filing a statement of presumed abuse. § 704(b)(2).

The UST contends that the presumption of § 707(b)(2) arises in this case.[3] She argues that the debtors miscalculated their disposable income in their Forms 22A, by improperly deducting on line 21 the amount of $997, representing the difference between their average mortgage payment and the amount of the mortgage expense allowed under IRS Local Standards. According to the UST, this line item is properly adjusted to zero, which results in monthly disposable income of $987.84, an amount in excess of the maximum, $182.50 in this case, necessary under the formula set forth in § 707(b)(2)(A) to avoid a finding of presumptive abuse.

On June 5, 2008, the debtors filed a declaration in opposition to the Motion, along with amended schedules of income and expenses ("amended I- and J-Schedules"), and a third Form 22A ("June 5 Form 22A"). In their declaration, the debtors testified that their original J-Schedule "was not accurate in that [the debtors] estimated [their] expenses and did not make a true and correct calculation from [their] records."[4] They further testified that the amended J-Schedule sets forth their actual expenses as of the petition date, based on "a thorough and detailed examination of [their] bank statements and receipts."[5] The debtors concluded that "after deducting their household

/ / /

---

3. The UST also sought dismissal under § 707(b)(3), but she has since withdrawn that request.

4. Debtors' Declaration in Response to Trustee's Motion to Dismiss Case for Abuse Pursuant to 11 USC 707(b)(1), filed June 5, 2008, ¶ 2.

5. Id., ¶ 3.

living expenses from either [Mr. Jones'] income or [their] joint income, [they] have no savings or net disposable income."[6]

In their June 5 Form 22A, the debtors increased the amount listed for Mrs. Jones' gross income (line 3), and increased the amounts listed for various expenses. They also reduced the amount listed for the housing and utilities adjustment (line 21) from $997 to $163.

The UST filed a reply on June 18, 2008, together with a supplemental supporting declaration, and on June 20, 2008, the debtors filed a supplemental declaration of Mrs. Jones, together with further amended I- and J-Schedules, and a fourth Form 22A. In this latest Form 22A, the debtors listed no income for Mrs. Jones, but maintained all the prior increased listings for expenses, including payroll taxes and other payroll deductions.

## II. ANALYSIS

A. Standards for Application of the Means Test

The court may dismiss a chapter 7 case filed by an individual with primarily consumer debts if it finds that the granting of chapter 7 relief would be an abuse of the provisions of chapter 7. § 707(b)(1). As indicated above, there is no dispute that the debtors in this case have primarily consumer debts.

There can be no presumption of abuse where the debtor's and debtor's non-separated spouse's current monthly income ("CMI"),[7]

---

6. Id., ¶ 8.

7. "Current monthly income" means, in a joint case, the debtor's and debtor's spouse's average monthly income during the six-month period ending on the last day of the calendar month
(continued...)

multiplied by 12, is equal to or less than the highest median family income of the applicable state for a family of comparable size. § 707(b)(7). All four versions of the Form 22A filed by the debtors in this case indicate that their CMI exceeds the applicable California median family income (see Debtors' Forms 22A, lines 12-15), and the debtors have not argued otherwise. Thus, the UST had standing to file a motion under § 707(b)(2).

Section 707(b)(2) sets forth a mechanical formula to be used in determining whether a presumption of abuse arises. Such a presumption arises where a debtor's CMI, as reduced by allowable expenses determined under § 707(b)(2)(A)(ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
>
> (II) $10,950.

§ 707(b)(2)(A)(i).

In other words, where a debtor's monthly disposable income ("MDI")[8] is less than $109.58 (that is, would yield less than $6,575 over 60 months), the case is not presumed abusive. On the other hand, the case is presumed abusive where MDI is either more than $182.50 (that is, would yield $10,950 over 60 months) or where MDI is between $109.58 and $182.50 and the applicable

---

7. (...continued)
immediately preceding the date of commencement of the case. § 101(10A).

8. CMI less allowable deductions under § 707(b)(2)(A)(ii), (iii) and (iv).

- 5 -

amount, multiplied by 60, would pay at least 25% of the debtor's non-priority unsecured debts.

> A debtor may rebut the presumption of abuse
>
> by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

§ 707(b)(2)(B)(i). To do this, the debtor must itemize and document each additional expense or adjustment of income, and provide a detailed explanation of the circumstances that make it necessary and reasonable. § 707(b)(2)(B)(ii).

B. The Debtors' Means Test

    1. The Housing Expense Adjustment

At the time the Motion was filed, the Debtors had filed two versions of the Form 22A--the February 12 and April 8 Forms 22A. In both, the debtors took a deduction for their actual mortgage payments, $2,011.16 (first deed of trust) and $161.72 (second deed of trust), a total of $2,172.88, on line 42.

If that amount, $2,172.88, had been less than the amount allowed by the IRS Local Standards, as allocated by the United States Trustee between rent/mortgage and nonrent/nonmortgage expenses, the debtors would have been permitted to claim the excess on line 20B. See In re Meek, 370 B.R. 294, 310-13 (Bankr. D. Idaho 2007). In other words, debtors are allowed to claim the greater of their actual mortgage payments and the IRS Local Standards, as allocated by the United States Trustee. They are not permitted to deduct both the total of their actual mortgage

/ / /

expenses and the amount by which that amount exceeds the Local Standard. Id.[9]

In this case, the debtors did just that--they deducted both their actual mortgage payments (on line 42) and the amount by which that total exceeds the Local Standard (on line 21).[10] This "double-dipping" formed the basis of the Motion.

Apparently in acknowledgment of the UST's position, the debtors, in their June 5 Form 22A, deducted only $163 on line 21, rather than the previous $997. Neither the declaration of both debtors, filed June 5, nor Mrs. Jones' declaration, filed June 20, provides any explanation of this figure, and the court

/ / /
/ / /
/ / /

---

9.

. . . Line 26 is not on Form 22C to permit a debtor to claim additional housing related expenses. Line 26, like Line 21, the corresponding line on the chapter 7 variant of the Statement of Current Monthly Income, Form 22A, does not invite debtors to increase their housing and/or utility expenses simply because they have higher expenses than allowed by the IRS Local Standard for housing. [¶] Line 26 allows debtors only to contest how the U.S. Trustee has divided the Local Standard for housing between the mortgage/rent and nonmortgage/nonrent expense categories.

In re Rajender, 2007 Bankr. LEXIS 2849 * 3 (Bankr. E.D. Cal. 2007).

10. That is to say, in the absence of any explanation by the debtors, the court assumes, as did the UST, that the $997 figure on line 21 represents such excess. The precise difference between the actual mortgage payment total and the Local Standard is $958.88 [$2,172.88 - $1,214].

has been able to discern none.[11]  This deduction must therefore be disallowed.

When this deduction is eliminated from the February 12 and April 8 Forms 22A, the calculations yield MDI (line 50) of $1,079.61 [$82.61 (from debtors' line 50) + $997] (February 12 Form 22A) or $809.69 [<$187.31> (from debtors' line 50) + $997] (April 8 Form 22A).  From these, the form allows a deduction for the average monthly administrative expense of a chapter 13 case (line 45(c)).  The appropriate deduction is $91.77 for the February 12 Form 22A and $68.82 for the April 8 Form 22A,[12] resulting in MDI of $987.84 or $740.87, depending upon whether one considers the February 12 or the April 8 version.  Thus, based on either of those two versions of the Form 22A, the debtors' MDI exceeds the $182.50 threshold, and the presumption of abuse arises.

2.  The Amended J-Schedule

The debtors did not attempt to overcome the presumption of abuse by showing special circumstances under § 707(b)(2)(B).  Instead, they filed amended I- and J-Schedules, along with a second amended Form 22A (the June 5 Form 22A).  Both debtors testified that their original J-Schedule "was not accurate" because they had used estimates, and that the amended schedule

---

11.  The words added in line 21 of the June 5 Form 22A—"Actual amount spent"—provide no assistance.  The amount, $163, is close to the actual amount of the debtors' second mortgage payment, $161.72.  However, that amount is already deducted on line 42, and cannot be deducted twice.

12.  See declaration of Robert S. Gordon, filed April 22, 2008, ¶¶ 10, 11, 13; UST's exhibits, filed April 22, 2008, Exhibits A and B.

reflects their actual expenses, as determined from their bank statements and receipts.

The court notes the dramatic increases in a number of the listed expenses--increases of $45 for electricity and heating, $214 for cell phone expense, $200 for food, $105 for clothing, $350 for transportation, $400 for recreation, and $35 for car insurance. Thus, although the debtors omitted the $365 expense of their quads, which they testified had been repossessed, the amended J-Schedule shows total expenses $987 higher than as listed in the original J-Schedule.

A debtor's schedules are signed under penalty of perjury. Fed. R. Bankr. P. 1008. The debtor has a duty to prepare them "'carefully, completely, and accurately.'" Hickman v. Hana (In re Hickman), 384 B.R. 832, 841 (9th Cir. BAP 2008), quoting Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.), 371 B.R. 412, 417 (9th Cir. BAP 2007). "The proper 'operation of the bankruptcy system depends on honest reporting.'" In re Mohring, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992), quoting Payne v. Wood, 775 F.2d 202, 205 (7th Cir. 1985).

Because of the sharp discrepancies between the original and amended schedules, the court cannot conclude that the debtors in this case prepared both sets accurately, fully, and carefully, as was their duty. The debtors themselves have admitted that the original J-Schedule was not prepared accurately. And the UST's

/ / /
/ / /
/ / /
/ / /

analysis strongly suggests that at least some of the figures in the amended J-Schedule are overstated by significant amounts.[13]

The court notes that because the debtors are above-median debtors, their expenses, for purposes of the means test, are those specifically allowed by § 707(b)(2)(A)(ii), (iii), and (iv), rather than those listed on the J-schedule.[14]  Thus, the expenses listed on the J-schedule, whether the original or an amended version, will not be considered in the means test analysis.  However, the court's concern here is that adjusting the I- and J-Schedules at will in response to developments in the case such as the Motion undercuts the integrity and credibility of the documents and the debtors.

   3.   The Third and Fourth Forms 22A

In response to the Motion, the debtors also further amended their Form 22A (the June 5 Form 22A).  They again used Mr. Jones'

---

13.  Based on an analysis of the debtors' bank statements and transaction summaries, the UST's bankruptcy analyst concludes that the food and transportation expenses in the amended J-Schedule are overstated by $494.53 and $410.70, respectively.  See supplemental declaration of Robert S. Gordon, filed June 18, 2008, ¶¶ 18, 19.

14.

> The debtor's monthly expenses <u>shall be</u> the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .

§ 707(b)(2)(A)(ii)(i) (emphasis added); <u>see also</u> In re Meek, 370 B.R. at 305 [for above-median debtors, expenses are based on subparagraphs (A) and (B) of § 707(b)(2), and not on schedule J]; In re Rezentes, 368 B.R. 55, 59-60 (Bankr. D. Hawaii 2007) [use of the means test expenses is mandatory for above-median debtors].

CMI, $7,184.78, but this time, they attributed $2,000 in income to Mrs. Jones, which appears to be the amount she is earning post-petition (Motion, at 10-11), not her CMI. This is an inaccurate figure for the Form 22A.

Further adding to the confusion, the debtors increased their deductions for food and clothing (line 19A), and for housing and utilities (line 20A). The new figures, $1,655 and $660, respectively, are the totals of the amounts listed on the amended J-Schedule for food, clothing, laundry and dry cleaning (totaling $1,655), and for electricity and heating fuel, water and sewer, and telephone (totaling $660). This directly contradicts the instructions for lines 19A and 20A, which call for the amounts from the National and Local Standards, respectively.

The debtors also deducted, on line 32, $214, which is the amount listed on the amended J-Schedule for cell phone service (inexplicably omitted from the original J-Schedule). However, the instructions for line 32 expressly preclude the deduction of basic home telephone or cell phone service.

The Form 22A contains a mechanical formula designed to represent a snapshot of a debtor's income, based on prior months, and his or her expenses allowable under § 707(b)(2), which, as indicated, are based in some instances on the National and Local Standards for families of equivalent size. Accordingly, when the formula is modified twice, first in response to the UST's statement of presumed abuse and then in response to her motion to dismiss, the integrity of the information is called into question and becomes suspect.

/ / /

The court notes also that the debtors failed to accurately report their income in their statement of financial affairs. Question 1 called for the gross amount of income received by the debtors year-to-date in the year in which the petition was filed, 2008, as well as in the two prior years. The only income reported by the debtors was as follows:

| | |
|---|---|
| $90,595.00 | 2006-Income wages-joint |
| $0.00 | 2007-Income wages-joint |

This information is obviously incomplete, representing not even the debtors' best guess for 2007 and 2008, and they have never supplemented it.

The problem is compounded by the fourth version of the Form 22A, the June 20 version. This latest version shows Mrs. Jones' CMI as zero, and is accompanied by her declaration, in which she testifies that her income "should never have been included in [the] calculations as [she] did not work pre-petition at all . . . ." She goes on to argue that she should not be forced to work in order to fund a chapter 13 plan.

On the contrary, it appears Mrs. Jones did work pre-petition, at least through September 25, 2007. Paystubs transmitted to the UST show her year-to-date income through that date at $13,307.[15] The Current Monthly Income Details for the Debtor, attached to the February 12 and April 8 Forms 22A, show she had no income in the three months prior to the chapter 7 filing, but $273.68 in the fourth month prior, $1,452 in the

/ / /

---

15. UST's exhibits, filed June 18, 2008, at 4-9.

1  fifth, and $1,474 in the sixth.  Thus, her CMI was appropriately
2  listed in the April 8 Form 22A as $533.28.
3      Mrs. Jones' desire not to work in the future does not change
4  the requirement that the means test calculations be based on her
5  and Mr. Jones' CMI, for purposes of determining whether the
6  presumption of abuse arises.[16]
7      4.  The Means Test Calculation
8      In the end, the court must determine what to make of the
9  many variations of the Form 22A the debtors have submitted.  As a
10 starting point, because of the debtors' failure to prepare their
11 Form 22A carefully, accurately, and completely, apparently at any
12 stage of the proceedings, the court will rely on the first such
13 document, the February 12 Form 22A, with certain exceptions.  On
14 the income side, that version appears to reflect the debtors'
15 actual CMI, $7,718.06, as itemized by month in the Current
16 Monthly Income Details for the Debtor, page 8 of the form.
17     On the expense side, the court accepts the deductions on
18 page 3 of the form, except the $997 deduction on line 21, which
19 will be adjusted to $0, for the reasons set forth above.[17]
20     The court accepts the figures on page 4, with one exception.
21 On line 25, the debtors entered $218.03 for income, social
22 security, and Medicare taxes, a figure that appears decidedly too

---

16.  See §§ 707(b)(2)(A)(i), 101(10A).

17.  The additional changes on page 3, made in the June 5 Form 22A and carried over into the June 20 version, at lines 19A and 19B, are rejected because they are derived from the debtors' J-schedule rather than the National and Local Standards.  The $163 deduction on line 21 of the June 5 and June 20 versions is rejected for the same reason that the $997 on the February 12 version is adjusted to $0.

low. Thus, in the absence of any assistance from the debtors, the court will use its best estimates, $466.20 for Mr. Jones and $120.70 for Mrs. Jones, a total of $586.90, as the appropriate deduction on line 25.[18][19]

The court will make one adjustment to the figures on page 5 of the February 12 Form 22A--the court will use $389.48 as the health savings account deduction (line 34(c)), rather than $194.74. This change appears in the April 8 Form 22A, and the court notes from Mr. Jones' paystubs that the $194.74 figure was for a two-week pay period only.

Incorporating these changes, $0 on line 21, $586.90 on line 25, and $389.48 on line 34(c), the court arrives at $516 as the debtors' projected average monthly chapter 13 plan payment.[20]

---

18. The UST's bankruptcy analyst has calculated typical payroll deductions for monthly income of $7,184.78, which is Mr. Jones' CMI. See UST's exhibits, filed April 22, 2008, Exhibit C. However, the court finds that Mr. Jones' actual deductions have been somewhat less. Thus, the court derives its figure from the actual federal and state income taxes and Medicare taxes withheld from Mr. Jones' paychecks during the six-month pre-petition period (UST's exhibits, filed June 18, 2008, pages 17-28), a total of $2,797.34, or an average of $466.20 per month. The court will add $120.70 for Mrs. Jones, derived from her actual withholdings in August and September 2007 (id., pages 6-9), a total of $241.40, averaged over two months.

19. The court will make no adjustment to the deduction on line 26, $173.30, as it appears to be the actual sum of Mr. Jones' union dues and the first five items on the list of Other Payroll Deductions attached to the February 12 I-schedule.

The $361 figure on line 26 of the June 5 Form 22A appears to be the sum of the first eight items of Other Payroll Deductions; however, this figure includes at least one item _not_ properly deducted on line 26, $200 for a voluntary 457 plan contribution. The court cannot determine the basis for the $211.46 figure on line 26 of the April 8 Form 22A.

20. $7,718.06 - $3,733.10 (line 33) - $801.98 (line 41) - $2,666.98 (line 46).

- 14 -

Using the current multiplier for chapter 13 trustee's fees, 8.5%, the court deducts $43.86 to arrive at $472.14 as the debtors' MDI (line 50). As this figure exceeds the threshold of $182.50, the presumption of abuse arises in this case, and has not been rebutted by the debtors.

### III. CONCLUSION

The court finds that the debtors' initial Form 22A, the February 12 version, was improperly completed, for the reasons set forth above. The court further finds that the debtors' multiple changes to their Form 22A, in response to viable objections, raise serious questions of credibility. In short, the various versions of the Form 22A have created a moving target.

In this situation, the court might well be justified in relying solely on the first version submitted, with the $997 adjustment for the improper "double-dipping," in which case the debtors' MDI would be $987.84, as concluded by the UST in the Motion.

However, the court has decided to look beyond the debtors' figures in an attempt to make an accurate assessment of their current monthly income and monthly disposable income, as those terms are defined for purposes of the § 707(b)(2) analysis. Having made adjustments based on reasonable inferences, the court concludes that the debtors' MDI is $472.14, an amount greater than the threshold of $182.50, and therefore, the presumption of abuse arises.

/ / /

/ / /

1 | Accordingly, the Motion will be granted unless the debtors
2 | voluntarily convert this case to chapter 13 within 15 days from
3 | the date of service of this ruling.  If the case is not so
4 | converted, the UST shall submit a form of order dismissing the
5 | case.

Dated: ~~June~~ July 3, 2008

　　　　　　　　　　　　　　　　　/s/ Robert Bardwil
　　　　　　　　　　　　　　　　　ROBERT S. BARDWIL
　　　　　　　　　　　　　　　　　United States Bankruptcy Judge

Case 08-90194    Filed 07/03/08    Doc 49

# CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814

Gary Farrar
P.O. Box 576097
Modesto, CA 95357

Eric & Karen Jones
2004 Floral Court
Modesto, CA 95356

Thomas Hogan
1207 13th St., #1
Modesto, CA 95354

DATE:   JUL - 3 2008

_____
Deputy Clerk